UNITED STATES, Appellee

v.

JOHN EDWARD SEESER, Private, U. S. Marine Corps,
Appellant

5 USCMA 472, 18 CMR 96

Francis B. Perry, ESQ., and CAPT Rufino R. Saez, USMCR, for Appellant.
CAPT Carl G. Lutz, USMCR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was originally tried on June 22, 1953, for the offense of sleeping on post, in violation of Article 113, Uniform Code of Military Justice, 50 USC § 707. He was found guilty as charged and was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for ten years. A board of review in the office of the Judge Advocate General of the Navy reversed the findings and sentence for procedural errors and granted a rehearing. On November 25, 1953, he was retried for the same offense and again found guilty. On this second occasion he was sentenced to dishonorable discharge, total forfeitures and confinement at hard labor for eight years. The convening authority approved the findings and the sentence, and a board of review affirmed the conviction but reduced the period of confinement to five years. We granted the petition for review to determine the single issue of whether the accused was a sentry or a lookout within the meaning of Article 113 of the Code.

Because of the nature of the question which confronts us, a short resume of the facts is necessary. On the night of March 3, 1953, the accused was a member of "I" Company, 7th Marines, occupying a defensive position in the presence of the enemy in Korea. His unit was stationed on the main line of resistance with the usual chain of command from platoon commander to fire team leader. Sometime prior to the principal event herein related, the accused was temporarily relieved from his normal fire team duties in order to supervise some Korean Service Corps personnel in obtaining ammunition for use by the machine gunners located in the platoon area. The entire platoon had been placed on a seventy-five percent alert during the early part of the evening, but due to what was believed to be some enemy action, sometime later that night and prior to 11:00 p.m. the platoon was placed on a one hundred percent alert. When the accused returned from his special assignment, and at about eleven o'clock that evening, he was met by a private first class who had been placed in command of the fire team to which the accused had been detailed. The accused was then informed by him of the possibility of enemy action and specifically told that the unit was on a one hundred percent alert. Apparently the tactical formation was such that the personnel of the fire teams were located along the main line of resistance, and individual fighting holes were to be occupied by certain designated individuals during the emergency. The accused was ordered by his leader "to proceed to the second hole from where I was and to stand watch." Sometime after the accused had taken his post, the platoon sergeant commenced inspecting the positions located in his area and when he approached the area of the accused's fighting hole, he was unchallenged; he noticed that the accused had his arms folded and his head down; he called out his name once and got no reply; he thereupon repeated his call without receiving an answer; he then went into the hole and stood close by the accused; he brushed by him, picked up his weapon, backed out of the position; and, he then left and continued on with his inspection. It is understandable why this witness left no doubt about the fact that the accused was asleep at that time.

Article 113 of the Uniform Code of Military Justice provides as follows:

**473**

"Any sentinel or look-out who is found drunk or sleeping upon his post, or leaves it before he is regularly relieved, shall be punished, if the offense is committed in time of war, by death or such other punishment as a court-martial may direct, but if the offense is committed at any other time, by such punishment other than death as a court-martial may direct."

In discussing the Article, the Manual, in paragraph 192, particularizes the elements of this branch of the offense to be: (1) that the accused was posted or was on post as a sentinel or a lookout; and (2) that while on his post he was found asleep. In addition, in defining when a sentinel or lookout is on post, the paragraph goes on to state:

"*A sentinel or lookout is on post within the meaning of this article* not only when he is at a post physically defined, as is ordinarily the case in garrison or aboard ship, but also, for example, *when he may be stationed in observation against the approach of an enemy,* or detailed to use any equipment designed to locate friend, foe, or possible danger, or at a designated place to maintain internal discipline, or to guard stores, or to guard prisoners while in confinement or at work.

"This article does not include an officer or enlisted person of the guard, or of a ship's watch, not posted or performing the duties of a sentinel or lookout, nor does it include a person whose duties as a watchman or attendant do not require that he be constantly alert." [Emphasis supplied.]

Counsel for appellant press on us the argument that the accused was not a sentinel or a lookout on his post; that he was only one of many marines who manned the main line of resistance; and, that if he can be classified as a sentry every man in the company could be grouped as such. They argue with plausibility that Article 113, Uniform Code of Military Justice, requires something more than the ordinary duties imposed upon all members of a unit or company. They have furnished us with an excellent history of this crime, and have traced in chronological order the criminal acts and statutes from which this offense takes life. We agree with much of what they assert, and certainly in a defensive tactical situation every member of a company or unit need not be considered as a lookout or sentinel. However, we leave unanswered many of the questions posed by counsel, as in this case we need not go so far as to determine how inclusive the words sentry, sentinel, or lookout may be. The only question which is posed by the evidence in this record is whether, at the time in question, the duties to which this accused was assigned constituted him a sentinel or a lookout. We are convinced they did.

A post is not determined by any particular area, but includes all the immediate territory that may be necessary for the proper performance of the duties for which a sentinel or lookout is posted. The Manual states he is on post when stationed at a position in observation against the approach of an enemy, and the facts in this case seem to bring the accused within that rule. There had been some disturbance which led the platoon commander to believe enemy action was imminent; a one hundred percent alert to cope with a disturbance was believed to be necessary; when a full alert is ordered, all personnel in a company must assume their fighting assignment; the accused was ordered to man a fighting hole on the main line of resistance; and, he was specifically directed to proceed to his position and ordered to stand watch. Those instructions could only have been interpreted by him to require that he be vigilant, remain awake, observe for the possible approach of the enemy, and sound an alert, if necessary. His primary assignment was observation; his secondary task, warning. When detailed for that particular type of duty, he became a sentry or a lookout, as defined by the Manual and within the meaning of Article 113 of the Code.

Some suggestion has been advanced that the offense of which the accused

was charged and stands convicted is no more than a violation of ▉▉ Article 99 of the Uniform Code of Military Justice, 50 USC § 693, and that the finding of guilt of the present serious offense should be reduced to a finding of misbehavior before the enemy. While the facts alleged and the evidence introduced in support thereof would have permitted the court-martial to find the accused guilty of violating Article 99, and we could have affirmed a conviction under that Article, we fail to see how such a substitution then, or at this time, would be of any benefit to this accused. Conviction of either offense is of sufficient gravity to permit the imposition of a death sentence in time of war, or, in time of peace, such other punishment as a court-martial may direct. One is not a lesser included offense of the other, and both would appear to be on an equal plane for inherent baseness. The penalty originally imposed on the accused has been reduced by a board of review to five years' imprisonment, dishonorable discharge, and forfeiture of all pay and allowances. It is reasonably certain that if we were to ferret out any reason to affirm a finding of guilt under Article 99, which we are not disposed to do, the sentence would remain unaffected.

For the foregoing reasons, the decision of the board of review is affirmed.

BROSMAN, Judge (concurring):

I concur with Judge Latimer.

Although this case involves a highly unusual situation, I have reached the conclusion that ⸝ the evidence is sufficient to show that the accused was in fact serving as a "sentinel or look-out" within the broad scope of Article 113. A sentinel is "a soldier set to guard an army, camp, etc., from surprise." Webster's New Collegiate Dictionary (2d ed). The accused was assigned to a specific foxhole for this very purpose—that is, to protect his Marine organization from surprise by Communist troops. He was posted on the main line of resistance, and his assignment was prompted by reports that suspicious circumstances had been observed.

The fact that a "100% alert" had been declared—with the result that all members of the accused's squad had been ordered to man designated foxholes and guard against such an attack—is of no aid to him. I can discern no substantial reason, either in law, logic, or policy, why every member of a unit may not at one time lawfully be posted as a sentinel. For example, would there be doubt that each soldier of a military police company was functioning as a sentinel if—during an emergency—all were assigned, say, to guard the approaches to a camp?

It is obvious that, although the accused was posted to a solitary foxhole along the main line of resistance in Korea, his was not the isolated outpost with which the sentinel or lookout is frequently associated in the public mind. However, the plain and basic purpose of Article 113—and its predecessor statutory provisions—was to enforce an especially high standard of care on the part of those entrusted with guarding the safety of a unit.

In a combat situation like the present one, where the survival of all depends on the alertness of each person detailed to guard against the enemy's approach, this legislative purpose clearly demands that Seeser be treated as a sentinel. It would be ridiculous, I think, to conclude that Congress meant that a sentry guarding prisoners of war, or a minor installation hundreds of miles to the rear, be punishable by death for the dereliction in suit, and yet intended to exclude from coverage under Article 113 one occupying Seeser's critical position here. In this connection, it is perhaps significant that neither during the first trial of this case, nor at the rehearing, was it contended in any sort of direct or indirect manner that the accused was not in very truth a sentinel or lookout.

The author of the principal opinion has suggested that we might have affirmed the present findings and sentence as importing guilt under Article 99 of the Uniform Code. While I am not as sure as he that this is so, the matter requires no comment in this memorandum. His remarks in this regard

are dicta, I am sure, and I see no point in speculating with respect to the number of statutory prohibitions the accused's conduct may have violated.

QUINN, Chief Judge (dissenting):

I dissent.

Article 113 clearly intends to differentiate between the general duty in which a whole unit is engaged and the specific and individualized duty of a sentinel or lookout. Since the situation here was only that of general duty for the organization during an alert, the accused cannot be regarded as a sentinel or lookout. I would therefore, return the case to The Judge Advocate General of the Navy for action consistent with this opinion.