UNITED STATES

v.

**Sergeant Allen D. GETMAN, FR 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 44th Security Police Squadron Fifteenth Air Force (SAC).**

**ACM S24396.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 5 March 1976.

Decided 31 Aug. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

## DECISION

EARLY, Senior Judge:

Tried by special court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of stealing Government property, and, despite his pleas, of buying stolen property, and sleeping on post, in violation of Articles 121, 134, and 113, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934, 913. The approved sentence extends to a bad conduct discharge, confinement at hard labor for three months and reduction to airman first class.

1. Air Force Regulation 125–3, Security Police Handbook, 28 May 1975 defines the security police mission as including "the security of the combat capability of the Air Force, protection of USAF resources . . . ." Paragraph 2–

Appellate defense counsel assign one error:

THE ACCUSED'S CONVICTION OF SLEEPING ON POST IS INVALID IN THAT HE WAS NOT POSTED AS A SENTINEL.

We disagree.

The accused, a security policeman, was assigned duties as "base patrol" which included the "general security of the base" and "law enforcement".[1] He was to be "on alert" at all times (although he was permitted periodic "breaks" upon proper notification to his superiors). His patrol area included certain buildings in a specified area, but, as ranking patrolman, he was authorized to go anywhere on base, and to the off-base housing area and the visitor control center outside the gate. He was responsible for the security of all the base other than the flightline area. While patrolling, he was required to call-in his position every half hour. His duty period was from 2130 hours to 0530 hours. At approximately 0340 the accused was found asleep in his patrol vehicle in the visitor control center.

On these facts appellate defense counsel assert that the accused was not a sentinel since he was merely performing general security police duties.

The offense of sleeping on post as a sentinel is as old as armies. Winthrop traces the predecessor of Article 113 (Article of War 39) to the Code of James II as derived from Article 50 of the Code of Gustavus Adolphus. Winthrop, Military Law and Precedents 616 (2d ed. 1920). The purpose of these Articles was "to secure on the part of sentinels that alert watchfulness and steadfastness which are the very essence of their service." Ibid.; see also *United States v. Seeser*, 5 U.S.C.M.A. 472, 18 C.M.R. 96, 99 (1955), (concurring opinion of Judge Brosman). The duties of a sentinel extend from

5a. "Here protection means taking whatever physical action is necessary to safeguard USAF resources against loss or damage." Paragraph 2–7.

ensuring an encampment against danger of surprise and capture from a hostile force in wartime to protection of public property collected at a military station from depredation or loss by fire in peacetime. The penalty for failure to perform these duties extends to death if occurring in the face of the enemy. Ibid.[2]

The Manual for Courts-Martial, 1969 (Rev.) includes within the definition of "post" such surrounding area "as may be necessary for the proper performance of the duties for which the sentinel or lookout was posted, "and further states:

A sentinel or lookout is on post within the meaning of this article not only when he is at a post physically defined, as is ordinarily the case in garrison or aboard ship, but also, for example, when he is stationed in observation against the approach of an enemy, or is detailed to use any equipment designed to locate friend, foe, or possible danger, or at a designated place to maintain internal discipline, or to guard stores, or to guard prisoners while in confinement or at work.

Paragraph 192 (similar language appears in the Manual for Courts-Martial, 1951).

In general, previous cases have defined "post" not only spacially but also in terms of the duties that the sentinel was to perform. See *United States v. Whiteman*, 4 C.M.R. 388 (A.B.R.1952); *United States v. Hurst*, 6 C.M.R. 307 (A.B.R.1952); *United States v. Williams*, 4 U.S.C.M.A. 69, 15 C.M.R. 69 (1954); *United States v. Hattley*, 3 U.S.C.M.A. 114, 11 C.M.R. 114 (1953); *United States v. Reynolds*, 6 U.S.C.M.A. 535, 20 C.M.R. 251 (1955).

As the Court held in *United States v. Seeser, supra*, 18 C.M.R. at 98:

A post is not determined by any particular area, but includes all the immediate territory that may be necessary for the proper performance of the duties for which a sentinel or lookout is posted. . . . His primary assignment was observation; his secondary task, warning. When detailed for that particular type of duty, he became a sentinel or a lookout, as defined by the Manual and within the meaning of Article 113 of the Code.

It is clear that the extent of a sentinel's post extends beyond the specific geographical limits of his orders if the purpose of his posting so requires, or, to put it another way, "in determining the limits of a post consideration must be given to the purpose for which it was established." *United States v. Bogdan*, 30 C.M.R. 679, 682 (N.B.R.1960). Thus, in *United States v. Rober*, 21 C.M.R. 560 (N.B.R.1956), the accused was posted as a member of the "Pentagon Security Team" whose duties included making security checks of offices, individuals and locked containers. The Board held that the assignment of duties considered in conjunction with the area of operation and the objective toward which the security measures were directed made the accused a sentinel rather than a watchman.

Although our research discloses no case exactly in point, there is no reason in logic why a person assigned a position whose duties are to observe and be alert to the possibility of some derogation of the security of the base or its occupants is not a sentinel within the terms of the Article. See *United States v. Seeser, supra*, (concurring opinion of Judge Brosman). It is manifest that modern science and cold warfare have changed the concept of the sentinel from the solitary individual walking an isolated, fifty foot perimeter post on watch against the enemy.[3] Modern transportation

2. "It is said that Epaminondas, in making the circuit of his camp slew a sentinel whom he found sleeping, using this memorable saying—'that he did him no harm, leaving him only as he found him.'" Quoted in Winthrop, op. cit. *supra*, at 618, n. 85.

3. In *United States v. Harris*, 25 C.M.R. 766 (A.F.B.R.1957), the accused was engaged as a sentinel performing duty as a radarscope observer and fell asleep. In finding that the accused was a "sentinel" within the meaning of Article 113, the board found that the accused was "charged with the special obligations of watchfulness and special vigilance which characterize the duties of a sentinel . . . [E]ven in time of peace the duty of the sentinel in guarding against aggressors is of vital importance . . . ." 25 C.M.R. at 767.

**282**

methods have extended his post from that which he could walk to the entire base, and modern communications have enabled him to remain in contact with his superiors far beyond a hail to the sergeant of the guards. That he drives instead of walks is no more significant than if he uses radar instead of his eyesight. See *United States v. Harris*, 25 C.M.R. 766 (A.F.B.R.1957). What is determinative is that he is entrusted with guarding the security of a unit. See *United States v. Seeser, supra.*

Applying these concepts to the instant case, we hold that the accused was properly posted as a sentinel, and was on his post when found sleeping.

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Judge, concurs.

LeTARTE, Chief Judge, absent.